610 So.2d 1283 (1992)
Michael COLEMAN, Appellant,
v.
STATE of Florida, Appellee.
No. 74944.
Supreme Court of Florida.
December 24, 1992.
*1284 Ted A. Stokes, Milton, for appellant.
Robert A. Butterworth, Atty. Gen. and Carolyn M. Snurkowski, Asst. Atty. Gen., Tallahassee, for appellee.
PER CURIAM.
Michael Coleman appeals his convictions of first-degree murder and resultant sentences of death. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We affirm the convictions and sentences.
Michael Coleman, Timothy Robinson, and brothers Bruce and Darrell Frazier were members of the "Miami Boys" drug organization, which operated throughout Florida. Pensacola members of the group moved a safe containing drugs and money to the home of Michael McCormick from which his neighbors Derek Hill and Morris Douglas stole it. Hill and Douglas gave the safe's contents to Darlene Crenshaw for safekeeping.
Late in the evening of September 19, 1988 Robinson, Coleman, and Bruce Frazier, accompanied by McCormick, pushed their way into Hill and Douglas' apartment. They forced Hill and Douglas, along with their visitors Crenshaw and Amanda Merrell, as well as McCormick, to remove their jewelry and clothes and tied them up with electrical cords. Darrell Frazier then brought Mildred Baker, McCormick's girlfriend, to the apartment. Robinson demanded the drugs and money from the safe and, when no one answered, started stabbing Hill. Crenshaw said she could take them to the drugs and money and left with the Fraziers. Coleman and Robinson each then sexually assaulted both Merrell and Baker.
After giving them the drugs and money, Crenshaw escaped from the Fraziers, who returned to the apartment. Coleman and Robinson then slashed and shot their five prisoners, after which they and the Fraziers left. Despite having had her throat slashed three times and having been shot in the head, Merrell freed herself and summoned *1285 the authorities. The four other victims were dead at the scene.
Merrell and Crenshaw identified their abductors and assailants through photographs, and Coleman, Robinson, and Darrell Frazier were arrested eventually.[1] A grand jury returned multiple-count indictments against them, charging first-degree murder, attempted first-degree murder, armed kidnapping, armed sexual battery, armed robbery, armed burglary, and conspiracy to traffic. Among other evidence presented at the joint trial, the medical examiner testified that three of the victims died from a combination of stab wounds and gunshots to the head and that the fourth died from a gunshot to the head. Both Crenshaw and Merrell identified Coleman, Robinson, and Frazier at trial, and Merrell identified a ring Coleman gave to a girlfriend as having been taken from her at the apartment. Several witnesses testified to drug dealing in Pensacola and to the people involved in that enterprise. Coleman and Robinson told their alibis to the jury[2] with Coleman claiming to have been in Miami at the time of these crimes and Robinson claiming he had been in New Jersey then. The jury found Coleman and Robinson guilty of all counts as charged and, after the penalty phase, recommended that they receive sentences of life imprisonment.[3] The trial court, however, disagreed with that recommendation and sentenced Coleman and Robinson to death.
As his first point on appeal, Coleman argues that the court erred in refusing to sever his trial from those of his codefendants because he was not involved in the drug conspiracy, his DNA did not match the sexual battery victims' vaginal swabs while Robinson's did, and his alibi defense was antagonistic to his codefendants'. All of the codefendants moved for severance at trial, but the trial court denied those motions. We find no error in the refusal to sever these trials.
Severance can be granted when it "is appropriate to promote a fair determination of the guilt or innocence of one or more defendants." Fla.R.Crim.P. 3.152(b)(1)(i). Severance is not necessary, however, "when all the relevant evidence regarding the criminal offense is presented in such a manner that the jury can distinguish the evidence relating to each defendant's acts, conduct, and statements, and can then apply the law intelligently and without confusion to determine the individual defendant's guilt or innocence." McCray v. State, 416 So.2d 804, 806 (Fla. 1982). A strategic advantage or hostility among defendants does not, by itself, require severance. Id.
These codefendants did not blame one another for these crimes, nor did anyone confess. Coleman and Robinson raised alibi defenses, and Frazier held the State to its burden of proof by standing mute. The evidence of the facts and circumstances leading to these murders explained these murders and the drug conspiracy to the jury; the convictions did not depend on the use of antagonistic evidence by one defendant against the others. The jury's lack of confusion is illustrated by its finding Coleman and Robinson guilty of four counts of first-degree murder and Frazier guilty of only one count of first-degree murder and three counts of second-degree murder when the eyewitness, Merrell, testified that Coleman and Robinson slashed and shot the victims and played the major roles in these crimes. We see no undue prejudice caused by the refusal to sever the trials of the defendants and hold that the trial judge did not abuse his discretion by denying the motions for severance.
*1286 During deliberations, the jury asked if the vaginal swabs taken from the sexual battery victims matched Coleman's DNA. After discussing the question with the parties, the court refused the defense request to tell the jury "no" and, instead, told the jurors to rely on their recollection of the evidence. Coleman now argues that refusing to answer the question constituted reversible error.
A trial court need only answer questions of law, not of fact, when asked by a jury and has wide discretion in deciding whether to have testimony re-read. Kelley v. State, 486 So.2d 578 (Fla.), cert. denied, 479 U.S. 871, 107 S.Ct. 244, 93 L.Ed.2d 169 (1986). The judge, therefore, correctly told the jurors that they would have to rely on their collective recollection of the evidence.[4] We find no abuse of discretion in refusing to have Merrell's testimony reread.
Coleman also argues that the State exercised two peremptory challenges in a racially discriminatory manner. The record, however, discloses that the court correctly found the State's explanation of why it excused these prospective jurors to be race neutral. Coleman has shown no abuse of discretion in the trial court's disagreement with him on this issue. See Reed v. State, 560 So.2d 203 (Fla.), cert. denied, 498 U.S. 882, 111 S.Ct. 230, 112 L.Ed.2d 184 (1990). We find no merit to this argument.[5]
Before trial Coleman filed motions to suppress the testimony of Merrell, Crenshaw, and Arabella Washington, a woman who had seen him in Jacksonville with the Fraziers and some of their associates. All three witnesses identified Coleman through photographs initially and in person at trial. Coleman now claims that the trial court erred in refusing to suppress their testimony because their in-court identifications were based on their tainted out-of-court identifications.
Based on Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), this Court has stated the appropriate test for out-of-court identifications as: "(1) did the police employ an unnecessarily suggestive procedure in obtaining an out-of-court identification; (2) if so, considering all the circumstances, did the suggestive procedure give rise to a substantial likelihood of irreparable misidentification." Grant v. State, 390 So.2d 341, 343 (Fla. 1980), cert. denied, 451 U.S. 913, 101 S.Ct. 1987, 68 L.Ed.2d 303 (1981). If the first part of the test is not met, the second part need not be considered. Id. at 344. In the instant case, after hearing testimony and argument, the trial court stated that
the law enforcement procedures utilized here to obtain pretrial identification were not impermissibly suggestive or suggestive in any way... . The situation here has depicted and disclosed that the investigating officers utilized a photographic album initially and there were no identifications effected through the use of the photographic albums, that they later utilized a photo-array of six or more separate individual photos. The court finds that the photos were not suggestive. There was no coercion or suggestiveness utilized during the course of the witness interviews or the ... identifications that were subsequently made.
The court denied Coleman's motions.[6]
We agree that the initial identifications were not tainted and that these witnesses' testimony did not need to be suppressed. Although shown photographs of numerous *1287 individuals, these witnesses unhesitatingly identified the codefendants when given groups of photographs containing theirs, and none of these witnesses picked out anyone other than the codefendants. The photographic lineups were not impermissively suggestive, and there is no merit to this point on appeal.
The trial judge found that five aggravating factors had been established: prior conviction of a violent felony; committed while engaged in robbery, sexual battery, burglary, and kidnapping; committed to avoid or prevent arrest; heinous, atrocious, or cruel; and cold, calculated, and premeditated. Coleman does not challenge any of these aggravators, but, as with his codefendant Robinson, we find the evidence insufficient to support the avoid, prevent arrest aggravator. Robinson v. State, 610 So.2d 1288 (Fla. 1992). The four other aggravators are amply supported by the record.
The judge considered the potential mitigating evidence that Coleman presented and found that his close family ties and support of his mother had been established. He found that other items advanced by Coleman, including his being raised in the Liberty City area of Miami, his athletic potential, the victims' background, and the possibility that he was not the actual killer, had not been established by the evidence or did not mitigate the enormity of Coleman's crimes. The judge concluded that the "jury's recommendation could have been based only on minor, non-statutory mitigating circumstances or sympathy." Applying the standard of Tedder v. State, 322 So.2d 908 (Fla. 1975), the judge held that a life recommendation based upon such non-statutory mitigating evidence alone was not reasonable. See Harmon v. State, 527 So.2d 182 (Fla. 1988). The judge imposed four death sentences, stating that they were "so clear and convincing that virtually no reasonable person could differ."
Coleman now argues that the trial judge erred in overriding the jury's recommendation of life imprisonment. In making this argument Coleman relies on cases such as Ferry v. State, 507 So.2d 1373 (Fla. 1987), and Carter v. State, 560 So.2d 1166 (Fla. 1990), in which the defendants presented overwhelming evidence in mitigation that provided reasonable bases for the juries' recommendations. In contrast, the potential mitigating evidence presented in the instant case is of little weight and provides no basis for the jury's recommendation. Cf. Thompson v. State, 553 So.2d 153 (Fla. 1989) (defendant killed friend who stole money from him, five aggravating factors), cert. denied, 495 U.S. 940, 110 S.Ct. 2194, 109 L.Ed.2d 521 (1990); Bolender v. State, 422 So.2d 833, 837 (Fla. 1982) (defendants killed four drug dealers, but victims' livelihood did "not justify a night of robbery, torture, kidnapping, and murder"), cert. denied, 461 U.S. 939, 103 S.Ct. 2111, 77 L.Ed.2d 315 (1983); White v. State, 403 So.2d 331 (Fla. 1981) (executionstyle killing of six victims during a residential robbery), cert. denied, 463 U.S. 1229, 103 S.Ct. 3571, 77 L.Ed.2d 1412 (1983). Bolender, especially, is on point with the instant case, and any sentence for Coleman other than death would be disproportionate. See Correll v. State, 523 So.2d 562 (Fla.) (four victims), cert. denied, 488 U.S. 871, 109 S.Ct. 183, 102 L.Ed.2d 152 (1988); Ferguson v. State, 474 So.2d 208 (Fla. 1985) (execution-style killing of six victims warrants death); Francois v. State, 407 So.2d 885 (Fla. 1981) (same), cert. denied, 458 U.S. 1122, 102 S.Ct. 3511, 73 L.Ed.2d 1384 (1982). We reach this conclusion, even though we have struck one of the aggravators found by the trial court, because there is no reasonable likelihood that the trial court would conclude that the mitigating evidence outweighed the four remaining aggravators. Any error was harmless. Holton v. State, 573 So.2d 284 (Fla. 1990), cert. denied, ___ U.S. ___, 111 S.Ct. 2275, 114 L.Ed.2d 726 (1991); Bassett v. State, 449 So.2d 803 (Fla. 1984).
That Frazier received a lesser sentence does not make Coleman's death sentence disproportionate. The record demonstrates that he was less involved and less culpable than Coleman or Robinson. In addition, the jury convicted Frazier of first-degree murder of only one of the victims *1288 and second-degree murder of the other. See n. 3, supra. Scott v. Dugger, 604 So.2d 465 (Fla. 1992), is factually distinguishable and does not provide a basis for relief here.
Therefore, we affirm Coleman's convictions and sentences of death.
It is so ordered.
SHAW, C.J. and OVERTON, McDONALD, GRIMES, KOGAN and HARDING, JJ., concur.
BARKETT, C.J., concurs in part and dissents in part with an opinion.
BARKETT, Chief Justice, concurring in part, dissenting in part.
Based on prior case law, I agree that Coleman's convictions should be affirmed. However, based on the standard of Tedder v. State, 322 So.2d 908 (Fla. 1975), I do not believe that the jury recommendation of life imprisonment should be disregarded. Based on the circumstances of the killings, as well as the evidence of nonstatutory mitigation, I cannot say that no reasonable person could have recommended a life sentence here. See id.; Hallman v. State, 560 So.2d 223, 226-27 (Fla. 1990).
NOTES
[1] According to the State's brief, Bruce Frazier has not been apprehended.
[2] Frazier did not testify.
[3] On the murder counts the jury convicted Frazier of first-degree murder of only one of the victims and of second-degree murder of the other three and recommended that he be sentenced to life imprisonment by a vote of eleven to one. The trial judge imposed a death sentence, but, when this Court relinquished jurisdiction, vacated that sentence in favor of life imprisonment. This Court then transferred Frazier's appeal to the district court of appeal. Frazier v. State, no. 74,943.
[4] The evidence is not as clear cut as Coleman alleges. The doctor who examined and interpreted the tests done on the swabs testified that failing to match Coleman did not mean that sexual activity had not occurred. Moreover, Merrell testified that Coleman, as well as Robinson, raped her.
[5] While not dispositive, it is interesting to note that at sentencing Robinson's counsel stated that eight of the twelve jurors were black.
[6] Due to its ruling on the first part of the test from Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), the court did not have to consider the second part of that test. It did so, however, because of concern over the applicability of Edwards v. State, 538 So.2d 440 (Fla. 1989). In Edwards the trial court found the initial lineup illegal, which raised the necessity of considering the second part of the Neil v. Biggers test. Edwards, therefore, is distinguished from this case on its facts.