720 So.2d 232 (1998)
Calvin Jerome JOHNSON, Jr., Appellant,
v.
STATE of Florida, Appellee.
No. 88986.
Supreme Court of Florida.
October 22, 1998.
*233 Teresa J. Sopp, Jacksonville, for Appellant.
Robert A. Butterworth, Attorney General, and Mark S. Dunn, Assistant Attorney General, Tallahassee, for Appellee.
PER CURIAM.
Calvin Jerome Johnson, Jr., appeals his convictions for the first-degree murder of Willie Gaines, the attempted first-degree murder of Calvin "Big" Gaines, armed robbery, attempted armed robbery, and burglary with an assault, and his sentences for those convictions, including his death sentence for the first-degree murder conviction. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We affirm the convictions and prison sentences, but reduce the sentence of death to life in prison without possibility of parole.
Willie Gaines was shot numerous times on December 30, 1994, and died one week later. Calvin Johnson, his brother Anthony Johnson, and Chiffon Bryant were indicted for first-degree murder and other crimes. Chiffon pleaded guilty to robbery and accessory to murder and was sentenced to time served. Calvin's motions to sever were denied, and he and Anthony were tried together.
The trial record reflects the following facts. "Big" Gaines testified that on the morning of December 30, 1994, he and his father, Willie, were repairing his car. The car was parked in front of the Gaineses' residence. Big Gaines was sitting in the driver's seat of the car and Willie was standing by the trunk of the vehicle. Big Gaines testified that Anthony appeared next to him with a gun and asked, "[W]here the money at, where the dope at?" Big Gaines claimed that Anthony ordered him to surrender his gun and cellular phone. Big Gaines stated that he informed Anthony that he did not have a gun or drugs, but that he gave Anthony approximately $1,400 and his cellular phone. Big Gaines asserted that he was ordered to get out of the car and place his hands on the top of the vehicle. Big Gaines *234 testified that when he got out of the car he witnessed a tall man stick an object into his father's back and escort him into the Gaineses' house. Big Gaines stated that soon thereafter he heard two or three shots fired in the house and his mother scream, "[D]on't kill my husband." Big Gaines said that he watched his mother run out of the front door of the house. He testified that, immediately after hearing the shots, he attempted to grab the barrel of Anthony's gun, but was shot in the leg after Anthony wrestled the weapon away from him. Big Gaines also testified that he was shot a second time in the left side of his torso. Big Gaines stated that he watched the second man lead his father by the arm out of the house and onto the front porch. Big Gaines said that the second man stood over his father for five or six seconds, then shot his father in the jaw after Anthony yelled, "[L]et's go." Finally, Big Gaines denied that he owed Anthony a gambling debt or that he was selling drugs at the time of the attack.
Chiffon Bryant testified that on December 30, 1994, Calvin, Anthony, and her boyfriend, Shirea Hickson, were helping her move into a new residence. While she was driving the group across town, Chiffon noticed a man on the side of the road working on an automobile and overheard Calvin say to Anthony, "[T]here is Big Gaines right there." Chiffon recalled that Anthony had mentioned that Big Gaines owed him money. Upon seeing Big Gaines, Anthony allegedly said to Chiffon, "[P]ull over, pull over. I can get my money from him now." Chiffon testified that she told Anthony that Big Gaines would not give him any money and Anthony replied that he was broke and Big Gaines was going to pay him. Chiffon claimed that she then said to Anthony, "What are you going to do, rob him?"
Chiffon testified that she stopped her car and Calvin and Anthony exited the vehicle carrying their guns. Chiffon stated that she proceeded to drive around the block and when she returned she heard shots and saw Big Gaines lying on the ground. Chiffon said that she drove away after she saw Calvin and Anthony flee the scene. Chiffon claimed that she picked up Calvin and Anthony after they intercepted her vehicle. Chiffon testified that while the group was leaving the scene, Anthony confessed that he shot Big Gaines. Chiffon further testified that "[Calvin Johnson] said that [Willie Gaines] pulled a gun on him and he had the nerve to try and shoot him and he had to fire him up." Calvin allegedly told Chiffon that he shot the victim "everywhere." At the time of her testimony, Chiffon had pleaded guilty to robbery and accessory to murder. Chiffon explained to the jury that she hoped for a favorable sentencing recommendation from the State in return for her truthful testimony.
Amanda Gaines testified that she observed a man with a gun enter her house with her husband, Willie. Amanda stated that the armed assailant set her husband in a chair in the living room. Amanda said that the chair was located near an area where Willie stored a handgun. Amanda said that the man saw her and ordered her to come into the living room. Amanda stated that she screamed, "[D]on't kill us, don't kill us. We don't have drugs. We don't have money," and ran to the back of the house. Amanda testified that she returned to the front of the house after hearing a shot and the front door open. Amanda stated that her husband's keys and handkerchief were on a table in the living room and those items had not been there prior to the gunman entering her home. Amanda testified, however, that no money or jewelry was missing from her house. At trial, Amanda twice identified Anthony as the shooter, but admitted that she was very upset at the time of the attack.
Calvin and his brother, Anthony, are separated in age by less than two years. Calvin's booking report listed him as six feet six inches in height and weighing 270 pounds, and Anthony's booking reports listed him as six feet six inches, 220 pounds. Woodrow Allen testified that he knew Calvin in January 1995, and that Calvin appeared to be approximately sixty pounds lighter at the trial.
Lindsey Walker lived one block away from the Gaineses' house. Walker testified that, when he drove by the Gaineses' residence on December 30, he saw Anthony shoot Big Gaines and run away. Walker testified that *235 he also witnessed Calvin run from the Gaineses' house. Walker claimed that he pursued Calvin and Anthony in his car, but ended the chase after the men aimed their guns at him.
Shea Brookins worked at a gas station near the Gaineses' residence. Brookins testified that, while returning from lunch on December 30, he saw two tall men exit a car near the Gaineses' house. Brookins stated that he subsequently heard shots and saw Calvin exit the Gaineses' house.
Three fired bullets and thirteen shell casings were recovered from the Gaineses' yard and residence. The bullets and casings were from .380 and .45 caliber handguns. The medical examiner for Duval County, Dr. Bonifacio Floro, testified that Willie was shot five times. Dr. Floro recovered three .380 caliber bullets from Willie's body. Willie was shot once in his left jaw, three times in his chest, and once in his right hand. Dr. Floro testified that Willie died from pneumonia resulting from the gunshot wounds. Dr. Floro stated that the accumulation of the wounds caused Willie to be immobilized, and that the immobilization and damage to the body predisposed him to pneumonia.
Edward Mason testified that, in January 1995, Calvin showed him an article in the Florida Star regarding the robbery and shootings and admitted that he participated in the crimes. Mason alleged that on a later date Calvin gave him a .380 and a .45 caliber handgun and told him to keep one of the guns and sell the other. Mason's testimony regarding this transaction with Calvin was corroborated by Woodrow Allen, who testified that he was with Mason when Calvin gave Mason the guns. Mason said that he eventually sold both guns. The guns were never recovered by the police. Mason testified that Calvin called him from jail and confessed that he committed the crimes with the guns that he had given to Mason. Mason also testified that Calvin said he shot the victim after he had resisted the robbery and that he would not be convicted if Mason remained quiet about the guns.
Anthony testified in his own defense. Anthony claimed that Big Gaines owed him money from gambling. Anthony stated that only he, Chiffon, and Hickson were at the Gaineses' residence on the day of the crimes. Anthony testified that he and Hickson exited Chiffon's car to speak with Big Gaines. Anthony admitted that he had a .45 caliber handgun in his possession at the time he confronted Big Gaines. Anthony claimed that Big Gaines voluntarily gave him $300 and his cellular phone as payment on the debt. Anthony stated that he saw Willie exit the house and then heard shots. Anthony further stated that he saw Willie point a gun at Hickson. Anthony said that he subsequently took cover behind Big Gaines' vehicle and heard more shots. Anthony claimed that he shot Big Gaines in self-defense after Big Gaines had attempted to retrieve a gun.
The jury convicted Calvin of first-degree murder, attempted first-degree murder, armed robbery, attempted robbery, and burglary. The jury recommended the death penalty by a vote of nine to three and the trial judge imposed the death sentence. The judge found the following aggravating circumstances: (1) Calvin was previously convicted of four violent felonies; (2) Calvin committed the murder while he was engaged in the commission of a burglary; and (3) Calvin committed the murder for pecuniary gain. The trial judge merged the burglary and pecuniary gain aggravators. The judge found the statutory mitigator of age (Calvin was twenty-two years of age at the time of the crime) and assigned very little weight to this factor. As to nonstatutory mitigation, the judge found: (1) Calvin surrendered to the police; (2) Calvin had a troubled childhood; (3) Calvin was previously employed; (4) Calvin was a good son and neighbor; (5) Calvin has a young child; and (6) Calvin earned a high school graduate equivalency degree and participated in high school athletics. Calvin's school background was given substantial weight and the other factors were assigned very little to slight weight. Codefendant Anthony was also convicted of first-degree murder and other crimes, but was sentenced to life in prison. In this appeal, Calvin raises two claims pertaining to the *236 guilt phase of his trial[1] and four claims pertaining to the penalty phase.[2]

GUILT PHASE
In his first guilt phase claim, Calvin argues that the trial judge abused his discretion in denying his motions to sever the trial. Calvin alleges that the judge's error resulted in the jury's considering certain prejudicial testimony that was applicable only to Anthony as evidence of guilt against Calvin. We find no error in the judge's refusal to sever the trials.
Under Florida Rule of Criminal Procedure 3.152(b)(1)(A), a severance of defendants may be ordered when it is appropriate to promote a fair determination of the guilt or innocence of the defendants. A severance is not necessary when the evidence is "presented in such a manner that the jury can distinguish the evidence relating to each defendant's acts, conduct and statements, and can then apply the law intelligently and without confusion to determine the individual defendant's guilt or innocence." Coleman v. State, 610 So.2d 1283, 1285 (Fla.1992)(quoting McCray v. State, 416 So.2d 804, 806 (Fla.1982)). This Court has previously upheld a trial judge's refusal to order a severance when the codefendants did not blame one another for the crimes or confess to the crimes, but merely raised alibi defenses. See Coleman, 610 So.2d at 1285.
Similar to the defendants in Coleman, Calvin and Anthony did not blame one another for the crimes or confess to the crimes, and Calvin's conviction was not dependent upon the use of antagonistic evidence by Anthony. To the contrary, Anthony's testimony suggested that someone other than Calvin was responsible for shooting Willie. The trial judge ensured that the evidence in this case was presented to the jury in a manner designed to eliminate juror confusion. For example, immediately following corrections officer Tracy Hawes' testimony regarding Anthony's possession of a handcuff key while he was incarcerated, the judge instructed the jury that such testimony could only be considered as evidence of guilt against Anthony and not Calvin. The judge did not abuse his discretion by denying Calvin's motions for severance.
In his second claim, Calvin argues that the trial judge erred in allowing Officer Hawes to testify regarding his discovery of a handcuff key in Anthony's jail cell because such testimony was irrelevant and prejudicial as to Calvin. This claim is without merit. At Calvin's request, the judge instructed the jury as follows: "Ladies and gentlemen, the evidence you just heard should be considered only in the case against Anthony Johnson and not in the case against Calvin Johnson." We find no error regarding this issue. See Jones v. State, 580 So.2d 143, 146 (Fla.1991)(defendant suffered no undue prejudice from presentation of evidence against codefendant where trial judge instructed jury that evidence went solely to the codefendant).
Finally, although Calvin does not challenge the sufficiency of the evidence, we have reviewed the record and found competent substantial evidence to support his convictions. The jury returned a general verdict of guilt. Regarding Calvin's first-degree murder conviction, the evidence is sufficient to uphold the conviction based on a theory of premeditation or felony murder. The record reveals that during the course of a burglary Calvin shot Willie multiple times in the house. Calvin then led Willie onto the porch and stood over him for five or six seconds before, without provocation, shooting him in the jaw. The medical examiner's testimony reflects that the accumulation of the wounds *237 to Willie's body caused his death by pneumonia.

PENALTY PHASE
In his first penalty phase claim, Calvin argues that the trial judge erroneously imposed three-year mandatory minimum sentences under section 775.087(2), Florida Statutes (1995), for his convictions for attempted first-degree murder, attempted robbery, and robbery with a firearm. To be subject to the three-year mandatory minimum sentence under section 775.087(2), a defendant must have possessed a firearm or destructive device during the commission of an enumerated felony. Calvin contends that the mandatory minimum sentences could not be imposed by the judge because the jury, in rendering a general verdict, did not find that he possessed a firearm during the commission of the crimes. We reject Calvin's claim. It is not essential to the judge's power to impose a mandatory minimum sentence that the jury find in a special verdict that the defendant possessed a firearm during the commission of an enumerated felony. We have held that "before a trial court may enhance a defendant's sentence or apply the mandatory minimum sentence for use of a firearm, the jury must make a finding that the defendant committed the crime while using a firearm either by finding him guilty of a crime which involves a firearm or by answering a specific question of a special verdict form so indicating." State v. Overfelt, 457 So.2d 1385, 1387 (Fla.1984) (emphasis added). In the present case, each of the relevant counts of the indictment charged Calvin with violating section 775.087.[3] In convicting Calvin as charged, the jury necessarily found that Calvin had possessed a firearm during the commission of the crimes. Therefore, the judge had the power to impose the mandatory minimum sentences as to the three challenged convictions.
In his second penalty phase claim, Calvin argues that the trial judge erred in finding the prior violent felony aggravating circumstance.[4] The prior violent felony aggravator attaches only "to life-threatening crimes in which the perpetrator comes in direct contact with a human victim." Lewis v. State, 398 So.2d 432, 438 (Fla.1981). Regarding the trial judge's finding, the sentencing order reads as follows:
On April 21, 1989, the Defendant was convicted of aggravated assault for shooting a firearm at his brother, Anthony Wayne Johnson. On October 19, 1989, he was convicted of aggravated battery for shooting one David Greenwall. In addition, the Defendant was convicted in this cause of the contemporaneous crimes of the robbery with a firearm and the attempted murder of a separate victim, Calvin Gaines. This aggravating circumstance has been proven beyond a reasonable doubt.
We have reviewed the record and we find that the judge committed no error in finding this aggravating circumstance.
In his next claim, Calvin asserts that the trial judge erred in finding that the murder was committed in the course of a burglary. In discussing the merged burglary/pecuniary gain aggravator, the sentencing order states in relevant part:
The Defendant and his co-defendant, Anthony Wayne Johnson, originally went to the residence of Willie Gaines for the purpose of robbing his son, Calvin Gaines, who also resided there. In doing so, Calvin Johnson and Anthony Johnson carried loaded pistols with them. At the residence, they found Calvin Gaines and Willie *238 Gaines working together in front of the house on the automobile of Calvin Gaines. While Anthony Johnson initiated the armed robbery of Calvin Gaines, then, the Defendant took Willie Gaines at gunpoint and forcibly entered the residence. Once inside, the Defendant attempted to rob Willie Gaines. He also fired the first of the gunshots which led to the death of Willie Gaines. (The last bullet fired into Willie Gaines was shot on the front porch of the house after the Defendant had removed the wounded but conscious Willie Gaines from his house to that front porch following the attempted robbery.)
Under section 810.02(1), Florida Statutes (1993), the crime of burglary is defined as "entering or remaining in a structure or a conveyance with the intent to commit an offense therein." The record reveals that Calvin forcibly entered the Gaineses' residence with the intent to commit, at a minimum, an aggravated assault therein. The evidence further reveals that Calvin wounded Willie during the commission of the burglary. Chiffon testified that Calvin and Anthony each carried a firearm when they exited her car to confront Big Gaines and Willie. The testimony of Big Gaines and Amanda demonstrates that Calvin led Willie at gunpoint into the Gaineses' residence. The evidence reveals that Willie was likely forced to empty his pockets once inside the home. Big Gaines and Amanda also testified that they heard shots fired inside the house. Amanda stated that she witnessed her husband's hand bleeding immediately after hearing the shots fired. Chiffon testified that Calvin confessed to her that he shot Willie "everywhere." Moreover, Mason testified that Calvin admitted to shooting Willie while he was committing a robbery. We find that the evidence supports the finding of this aggravator.
In his final penalty-phase claim, Calvin contends that his death sentence is disproportionate. In deciding whether death is a proportionate penalty, we must consider the totality of the circumstances of the case and compare the case with other capital cases. See Urbin v. State, 714 So.2d 411, 416-17 (Fla.1998); Tillman v. State, 591 So.2d 167, 169 (Fla.1991). We also must remain mindful that the death penalty is reserved for the most aggravated and least mitigated of first-degree murders. See State v. Dixon, 283 So.2d 1, 7 (Fla.1973). The present case involves a horrible, senseless and indefensible first-degree murder, and it poses a close question on whether the sentence of death is warranted. Upon reviewing the record and similar capital cases, however, we conclude that this crime is not among those for which the death penalty is specifically reserved under State v. Dixon.
The circumstances of this case support vacating the death sentence. The prior violent felony aggravating circumstance, although properly found to be present, is not strong when the facts are considered. The aggravator is based in part on an aggravated assault committed by Calvin upon his brother, Anthony. Anthony testified in the present case that he was not injured in the confrontation with his brother and that the entire incident occurred because of a misunderstanding. The aggravator is also based in part on Calvin's two contemporaneous convictions as principal to crimes against Big Gaines simultaneously committed by codefendant Anthony. This prior violent felony aggravator and the burglary/pecuniary gain aggravator are balanced against the following statutory and nonstatutory mitigation: (1) Calvin was twenty-two at the time of the crime; (2) Calvin voluntarily surrendered to the police; (3) Calvin had a troubled childhood; (4) Calvin was previously employed; (5) Calvin was respectful to his parents and neighbors; (6) Calvin has a young daughter; and (7) Calvin earned a GED and participated in high school athletics. The trial judge accorded substantial weight to the final mitigating circumstance. In addition to the totality of the circumstances supporting the vacation of the death sentence, we find that this case is similar to other capital cases in which we have vacated imposed death sentences. See Terry v. State, 668 So.2d 954 (Fla.1996) (death sentence disproportionate where facts surrounding homicide were unclear and the aggravating circumstances were not extensive); Thompson v. State, 647 So.2d 824 (Fla. 1994) (death sentence disproportionate where only one valid aggravator and significant nonstatutory mitigation exist).
*239 For the reasons expressed, we affirm Calvin Jerome Johnson's convictions. We also affirm Calvin's sentences for attempted first-degree murder, attempted robbery, and robbery with a firearm. We vacate Calvin's sentence of death and direct that upon remand he be sentenced to life imprisonment without possibility of parole.
It is so ordered.
HARDING, C.J., and OVERTON, SHAW, KOGAN and ANSTEAD, JJ., concur.
PARIENTE, J., concurs in result only.
WELLS, J., concurs as to the conviction, but dissents as to the sentence only.
NOTES
[1] Calvin raises the following guilt-phase claims: (1) the trial judge erred in denying Calvin's motions to sever the trials of the defendants; and (2) the trial judge erred in admitting testimony relating to the discovery of a handcuff key in Anthony's possession.
[2] Calvin raises the following penalty-phase claims: (1) the trial judge erred in imposing the mandatory minimum sentence as to three convictions; (2) the trial judge erroneously found the prior violent felony aggravating circumstance; (3) the trial judge erroneously found the aggravating circumstance that the crime was committed during the course of a burglary; and (4) the imposition of the death penalty is disproportionate in this case.
[3] Calvin concedes that the counts of the indictment charging him with attempted robbery and robbery with a firearm alleged violations of section 775.087. However, Calvin claims that because the count charging him with attempted first-degree murder did not allege a violation of section 775.087, he cannot receive the mandatory minimum sentence for his conviction. Our examination of the indictment reveals that the count at issue charged Calvin with a violation of section 735.087, a non-existent section within the Florida Probate Code. This obvious typographical error does not support Calvin's challenge to the mandatory minimum sentence.
[4] Calvin also asserts that the offenses underlying this aggravator are not serious in nature and that the judge accorded the aggravator an excess amount of weight. We will address this argument in our review of the proportionality of Calvin's death sentence.