PER CURIAM.
Timothy Robinson appeals his convictions of first-degree murder and sentences of death. We have jurisdiction pursuant to article V, section 3(b)(1), Florida Constitution, and affirm the convictions and sentences.
The facts of this case are set out more fully in Coleman v. State, 610 So.2d 1283 (Fla.1992), and are repeated here in summary fashion only. Robinson and his code-fendants Michael Coleman and Darrell Frazier were members of a drug gang that operated throughout Florida. This case started when two Pensacola men stole a safe containing some of the gang’s drugs and money and ended with four people being slashed and shot to death after a night of robbery, torture, and rape. Multiple-count indictments charged Robinson, Coleman, and Frazier with first-degree murder, attempted first-degree murder, armed kidnapping, armed sexual battery, armed robbery, armed burglary, and conspiracy to traffic. The jury convicted Robinson and Coleman of all counts as charged and recommended that they be sentenced to life imprisonment. The trial court, however, imposed four death sentences on each, prompting this appeal.
Robinson raises numerous issues on appeal, several of which merit little discussion. He argues that the trial court erred in denying both a continuance and a change of venue, but has shown no abuse of discretion that would require reversal of the court’s decisions. Provenzano v. State, 497 So.2d 1177 (Fla.1986), cert. denied, 481 U.S. 1024, 107 S.Ct. 1912, 95 L.Ed.2d 518 (1987); Woods v. State, 490 So.2d 24 (Fla.), cert. denied, 479 U.S. 954, 107 S.Ct. 446, 93 L.Ed.2d 394 (1986). As we did with Coleman, we find no error in the trial court’s refusal to sever Robinson’s trial from his codefendants’. We also find no error in not severing out the conspiracy count because the offenses are based on connected acts or transactions. See Fla.R.Crim.P. 3.150(a). Evidence of the other offenses could have been admitted in separate trials. Bundy v. State, 455 So.2d 330, 345 (Fla.1984).
Robinson also argues that the evidence is insufficient to support his conspiracy conviction. Conspiracy has been defined as “an express or implied agreement of two or more persons to accomplish, by concerted action, some criminal or unlawful act.” Boyd v. State, 389 So.2d 642, 647 n. 2 (Fla. 2d DCA 1980). The existence of a conspiracy can be inferred from the conduct of the participants or from circum *1290 stantial evidence. See Perez v. State, 561 So.2d 1265 (Fla. 3d DCA), review denied, 576 So.2d 289 (Fla.1990). As summarized by the trial court:
Timothy Robinson, Darrel Frazier, Bruce Frazier and Michael Coleman were residents of Miami, Florida, who supervised and were associated with a cocaine distribution enterprise headed by Ronald Williams. The enterprise reached as far as Pensacola, Florida, and employed intermediate associates to oversee street-level employees responsible for the distribution and sale of quantities of cocaine which were usually sent from Miami in minimum lots of one kilo for subsequent division and sale. On or about September 18, 1988, local members of the enterprise became concerned over the security of their operations and moved a safe containing a large quantity of cocaine and cash from one apartment to another apartment occupied by Michael Anthony McCormick, one of the enterprise’s street-level employees.... Shortly after the safe and its contents were deposited at McCormick’s apartment, Hill and Douglas gained entry to it and removed the safe and its contents....
Angered by the theft of their drugs and money, members of the enterprise, including the defendants Robinson, Coleman and Frazier, began to search Pensacola for their property. This search ultimately took them to the duplex apartment of Hill and Douglas.
Contrary to Robinson’s assertion, the evidence is sufficient to support his conviction of conspiracy to traffic.
During closing argument, the prosecutor placed two knives that had been entered into evidence on the bar of the jury box. The defense objected, and the court asked the prosecutor to remove them. Robinson now argues that the prosecutor’s acts served only to inflame the jury and that he should receive a new trial. We disagree.
As we have stated before: “The proper exercise of closing argument is to review the evidence and to explicate those inferences which may reasonably be drawn from the evidence.” Bertolotti v. State, 476 So.2d 130, 134 (Fla.1985). Closing argument, however, “must not be used to inflame the minds and passions of the jurors.” Id. This case is a far cry from Spriggs v. State, 392 So.2d 9 (Fla. 4th DCA 1980), in which the district court admonished a prosecuting attorney for sticking a knife used in an armed robbery into the rail of the jury box during closing argument. Here, the knives did not become a feature of closing argument, and Robinson has not shown that he was denied a fair trial.
Robinson also claims that the trial court’s ordering the defendants to remain shackled during trial violated his due process rights. He objected to the shackling, but the court stated it was necessary due to unspecified information received by the court. Robinson, however, never asked the court to explain further, and we see no reversible error here. The court excused the jury and had Robinson’s shackles removed before he took the witness stand. A piece of cardboard placed under the defense table to hide the defendants’ legs fell over during trial, but Robinson has not shown that the jurors noticed, or were affected by, the shackles. We therefore find no merit to this issue.
In March 1989 the State sent the vaginal swabs taken from the sexual battery victims and blood samples from Coleman and Robinson to a laboratory for DNA testing. By telephone Robinson’s counsel deposed the laboratory’s employees about the test results on May 15, 1989. Counsel received a copy of the laboratory’s report and of its testing manual on May 21, 1989, the day before trial began. Robinson moved for a continuance so that the defense could talk with someone else about the DNA testing, but the trial court denied that motion. The DNA witnesses testified on May 25 and 26, and Robinson moved to suppress their testimony. The trial court, however, held that DNA testing is sufficiently reliable to be accepted in Florida courts and that, assuming other predicate facts could be established, the laboratory employees could testify.
*1291 Now, Robinson argues that the trial court erred both in denying the continuance and in admitting the DNA testimony. We disagree.
Robinson relies on Hill v. State, 535 So.2d 354 (Fla. 5th DCA 1988), in which the district court held that a continuance should have been granted where the defense was allowed, for the first time, to interview and depose witnesses about DNA testing results the day before trial. Hill, however, is distinguishable. Robinson knew that the surviving victim would identify him as having raped her. He also knew for months that DNA testing was being performed. Through the deposition, he knew the results of that testing the week before trial and received a copy of the written report at least three days before the laboratory employees testified. On the facts of this case Robinson has shown no abuse of discretion in the trial court’s refusing a continuance.
In admitting the results of scientific tests and experiments, the reliability of the testing methods is at issue, and the proper predicate to establish that reliability must be laid. Ramirez v. State, 542 So.2d 352 (Fla.1989). If the reliability of a test’s results is recognized and accepted among scientists, admitting those results is within a trial court’s discretion. Stevens v. State, 419 So.2d 1058 (Fla.1982), cert. denied, 459 U.S. 1228, 103 S.Ct. 1236, 75 L.Ed.2d 469 (1983). When such reliable evidence is offered, “any inquiry into its reliability for purposes of admissibility is only necessary when the opposing party makes a timely request for such an inquiry supported by authorities indicating that there may not be general scientific acceptance of the technique employed.” Correll v. State, 523 So.2d 562, 567 (Fla.), cert. denied, 488 U.S. 871, 109 S.Ct. 183, 102 L.Ed.2d 152 (1988) (emphasis supplied).
In denying the motion to suppress the trial court stated:
Now, with respect to the other prong of your motion concerning the issue of whether or not the DNA testing is sufficiently reliable to have gained acceptance as a basis for testimony in courts in Florida, the court is just going to abide by the decisions already existent in Florida, particularly those from other districts, and rule that as a matter of law, assuming other predicate facts can be established, that this testimony would be admissible.
This statement is an obvious reference to Andrews v. State, 533 So.2d 841 (Fla. 5th DCA 1988), review denied, 542 So.2d 1332 (Fla.1989), wherein the district court made a comprehensive survey and analysis of DNA testing evidence and concluded: “In contrast to evidence derived from hypnosis, truth serum and polygraph, evidence derived from DNA print identification appears based on proven scientific principles.” Id. at 850. Following the adverse ruling, Robinson’s counsel voir dired the laboratory’s employees and cross-examined them, making extensive inquiries as to the standards used in DNA comparisons. Robinson did not, however, produce anything that questioned the general scientific acceptance of the testing. We hold, therefore, that on the facts of this case Robinson has shown no reversible error or abuse of the trial court’s discretion regarding admissibility of the DNA test results.
In support of the death sentences the trial court found that five aggravators had been established: previous conviction of a prior violent felony; committed during a robbery, sexual battery, burglary, and kidnapping; committed to avoid or prevent a lawful arrest; heinous, atrocious, or cruel; and cold, calculated, and premeditated. We agree with Robinson that the evidence does not support finding committed to avoid or prevent arrest in aggravation. Cf. Riley v. State, 366 So.2d 19, 22 (Fla.1978) (“[T]he mere fact of a death is not enough to invoke this factor when the victim is not a law enforcement official. Proof of the requisite intent to avoid arrest and detection must be very strong in these cases.”). The other aggravators are fully supported by the record.
Robinson also argues that the trial court erred in overriding the jury’s recommendation of life imprisonment. As we did with Coleman, however, we disagree with *1292 this contention. Robinson relies on cases such as Ferry v. State, 507 So.2d 1373 (Fla.1987), and Washington v. State, 432 So.2d 44 (Fla.1983), where this Court reversed jury overrides. In the cases relied on, however, the defendants established overwhelming mitigating evidence that provided reasonable bases for their juries’ recommendations. Here, on the other hand, the trial court found in mitigation only that Robinson had maintained close family ties and had been supportive of his mother. As to the other potential mitigating evidence, the court stated:
The remaining contentions are not borne out by the evidence, and even if they were, would have no mitigating value: defendant’s education while incomplete was not altogether lacking and would not excuse or mitigate the vicious crimes committed; his low IQ did not impair his judgment or actions; he was not an abused child and this fact cannot serve to mitigate his conduct. Finally, the victim’s background cannot be used to mitigate the sentence to be imposed and warranted under these facts.
We agree that the potential mitigating evidence presented in this case does not provide a reasonable basis for the jury’s recommendation. Cf. Thompson v. State, 553 So.2d 153 (Fla.1989) (defendant killed friend who stole money from him, five ag-gravators), cert. denied, 495 U.S. 940, 110 S.Ct. 2194, 109 L.Ed.2d 521 (1990); Bolender v. State, 422 So.2d 833, 837 (Fla.1982) (defendants killed four drug dealers, whose livelihood did “not justify a night of robbery, torture, kidnapping, and murder”), cert. denied, 461 U.S. 939, 103 S.Ct. 2111, 77 L,Ed.2d 315 (1983); White v. State, 403 So.2d 331 (Fla.1981) (execution-style killing of six victims during a residential robbery), cert. denied, 463 U.S. 1229, 103 S.Ct. 3571, 77 L.Ed.2d 1412 (1983). As with Coleman, any sentence other than death for Robinson would be disproportionate. See Bolen-der (four victims); Correll (four victims); Ferguson v. State, 474 So.2d 208 (Fla.1985) (six victims); Francois v. State, 407 So.2d 885 (Fla.1981) (six victims), cert. denied, 458 U.S. 1122, 102 S.Ct. 3511, 73 L.Ed.2d 1384 (1982). Striking one of the aggrava-tors does not alter this conclusion because there is no reasonable likelihood that the trial court would conclude that the mitigating evidence outweighed the four valid ag-gravators. Any error, therefore, was harmless. Holton v. State, 573 So.2d 284 (Fla.1990), cert. denied, — U.S. -, 111 S.Ct. 2275, 114 L.Ed.2d 726 (1991); Bassett v. State, 449 So.2d 803 (Fla.1984).
Robinson’s death sentence is not disproportionate because Frazier received a sentence of life imprisonment. In contrast to Robinson and Coleman, the jury convicted Frazier of only one count of first-degree murder and recommended that he not be sentenced to death by a vote of eleven to one. This disparate treatment is warranted by the facts, facts that show that Frazier was less culpable than Robinson or Coleman. Scott v. Dugger, 604 So.2d 465 (Fla.1992), is factually distinguishable and provides no basis for relief.
Therefore, we affirm Robinson’s convictions and sentences of death.
It is so ordered.
SHAW, C.J. and OVERTON, McDonald, GRIMES, KOGAN and HARDING, JJ., concur.
BARKETT, J., concurs in part and dissents in part with an opinion.