641 So.2d 120 (1994)
Mark Vincent OLVERA, Appellant,
v.
STATE of Florida, Appellee.
No. 92-3173.
District Court of Appeal of Florida, Fifth District.
May 31, 1994.
On Motion for Rehearing and Certification July 29, 1994.
James B. Gibson, Public Defender, and Nancy Ryan, Asst. Public Defender, Daytona Beach, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Kellie A. Nielan, Asst. Atty. Gen., Daytona Beach, for appellee.
PER CURIAM.
AFFIRMED.
HARRIS, C.J., and PETERSON and DIAMANTIS, JJ., concur.

ON MOTION FOR REHEARING AND CERTIFICATION
DIAMANTIS, Judge.
We deny the motion for rehearing and certification filed by appellant Mark Vincent Olvera for the reasons stated below.
In his motion for rehearing, Olvera cites to the decision in Vargas v. State, 640 So.2d 1139 (Fla. 1st DCA 1994), claiming that "the identical question" which was raised in Vargas was raised in this appeal and that the decision in Vargas is in conflict with the per curiam affirmance issued in this case. Olvera requests that this court certify this matter to the supreme court, citing conflict with Vargas, or, in the alternative, certify the question as to whether:
the authorities that must accompany a request for a Frye hearing may consist of case law, scientific journals, or both, or whether the opponent of novel scientific evidence must introduce expert testimony as well.
We conclude that the decision in Vargas is factually and legally distinguishable from the instant case and that certification is not proper in this case because no conflict exists.
In Vargas, the defendant challenged the admissibility of DNA profile evidence. Specifically, Vargas challenged the final stage of DNA profiling when, after it is determined that the defendant's DNA matches the DNA found in the sample taken from the crime scene, population statistics are applied to determine the likelihood that someone else in the population might also match the DNA found at the crime scene. *121 Vargas argued that the data base compiled by the FBI and used by the FDLE to determine the probability that someone else in the population would also match the DNA found at the crime scene was novel scientific evidence not generally accepted in the scientific community as reliable for use at criminal trials.[1]Vargas, 19 Fla. L. Weekly at D1188.
In reviewing this claim, the first district first noted that the Vargas case was unique and presented a "new challenge to the admissibility of DNA profile evidence" because Vargas had focused his challenge to the admissibility of DNA evidence on the narrow issue of the adequacy of the data base used by the state to calculate the probability that someone else had the same DNA fingerprint as Vargas.[2]Vargas, 640 So.2d at 1144. The court also emphasized that Vargas presented an "extensive challenge below to the data bases upon which the probability calculations are based, putting on expert testimony and proffering extensive documentation to support [his] position." Id. The first district reviewed the issue de novo and concluded that the expert evidence which was presented to the trial court, along with judicial opinions from other jurisdictions which were cited by Vargas, established that the FBI data base used in the Vargas case was not generally accepted in the scientific community. Importantly, the first district did not rule that DNA test results, as a whole, are per se inadmissible but only that the data base which was used in Vargas's case was improper. The first district further ruled that, because the expert testimony presented by the state indicated that the use of a more conservative data base would be generally accepted in the scientific community, remand to the trial court for further proceedings was necessary in order to allow the trial court to determine whether the use of a different data base would be possible in Vargas's case. The court noted that, if so, the DNA test results would be admissible.[3]Id. at 1150.
In contrast, in the instant case Olvera did not challenge the admissibility of the FBI's data bases, but instead, he claimed generally that the trial court erred in failing to conduct a Frye hearing. We rejected this claim of error because (1) although at the suppression hearing the trial court specifically advised Olvera that the court only would consider evidence which was properly introduced, Olvera failed to introduce into evidence any of the articles which Olvera claims challenged the reliability of DNA testing, and (2) Olvera's expert witness testified that he had no concern with the methodology employed by the FBI in conducting its DNA testing but, instead, merely questioned the lack of controls at the FBI laboratory. Accordingly, the ruling in Vargas has no effect upon the instant case because, unlike Olvera, Vargas presented substantial evidence to support his claim that the specific FBI data base used in his case was not generally accepted in the scientific community. See Robinson *122 v. State, 610 So.2d 1288, 1291 (Fla. 1992) (appellate challenge to introduction of DNA test results rejected where defendant failed to produce evidence that questioned general scientific acceptance of testing), cert. denied, ___ U.S. ___, 114 S.Ct. 1205, 127 L.Ed.2d 553 (1994).
MOTION DENIED.
HARRIS, C.J., and PETERSON, J., concur.
NOTES
[1] See Frye v. United States, 293 F. 1013 (D.C. Cir.1923). Under Frye, in order to be admissible, expert scientific opinion must be based on techniques that have been "generally accepted" by the relevant community and found to be reliable. The United States Supreme Court in Daubert v. Merrell Dow Pharmaceuticals, Inc., ___ U.S. ___, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), broadened the standard for admissibility of scientific opinion based upon the language of rule 702 of the Federal Rules of Evidence, which language is also contained in section 90.702, Florida Statutes (1993). Our supreme court, however, has indicated, in a case decided subsequent to Daubert, that Florida will continue to follow Frye. See Flanagan v. State, 625 So.2d 827, 829 (Fla. 1993).
[2] Compare, for example, Andrews v. State, 533 So.2d 841 (Fla. 5th DCA 1988) (defendant raised general challenge to DNA testing procedure used), rev. denied, 542 So.2d 1332 (Fla. 1989); Martinez v. State, 549 So.2d 694 (Fla. 5th DCA 1989) (issue raised involved prejudicial effect of using DNA statistical data at trial because of its conclusiveness).
[3] The first district also certified the following question to the supreme court as one of great public importance:

IS THE FDLE (FBI) METHOD OF CALCULATING POPULATION FREQUENCIES FOR PURPOSES OF DETERMINING THE POSSIBILITY THAT SOMEONE OTHER THAN DEFENDANT MATCHES THE DNA TAKEN FROM THE CRIME SCENE IN DNA PROFILING GENERALLY ACCEPTED IN THE RELEVANT SCIENTIFIC COMMUNITY FOR USE IN CRIMINAL TRIALS IN FLORIDA; IF NOT, IS A MORE CONSERVATIVE METHOD OF ESTIMATING POPULATION FREQUENCIES GENERALLY ACCEPTED IN THE RELEVANT SCIENTIFIC COMMUNITY FOR USE IN CRIMINAL TRIALS?
Vargas, 640 So.2d at 1152.