PER CURIAM.
Timothy Robinson appeals an order of the circuit court denying his motion to vacate his convictions of first-degree murder and sentences of death filed under Florida Rule of Criminal Procedure 3.850. Robinson also petitions this Court for a writ of habeas corpus. We have jurisdiction. See art. V, § 3(b)(1), (9), Fla. Const. For the reasons set out in greater detail below, we reverse the circuit court’s denial of postconviction relief as it pertains to Robinson’s claim of ineffective assistance of counsel during the penalty phase. Specifically, we conclude that counsel rendered ineffective assistance by failing to investigate, develop, and present available mitigating evidence that would have legally precluded the trial court from overriding the jury’s life recommendation. We therefore vacate Robinson’s death sentences *174 and remand for the imposition of sentences of life in prison. We deny Robinson’s petition for writ of habeas corpus.
FACTS AND PROCEDURAL HISTORY
The following facts were set forth in this Court’s opinion on direct appeal in the case of Robinson’s co-defendant, Michael Coleman:
Michael Coleman, Timothy Robinson, and brothers Bruce and Darrell Frazier were members of the “Miami Boys” drug organization, which operated throughout Florida. Pensacola members of the group moved a safe containing drugs and money to the home of Michael McCormick from which his neighbors Derek Hill and Morris Douglas stole it. Hill and Douglas gave the safe’s contents to Darlene Crenshaw for safekeeping.
Late in the evening of September 19, 1988[,] Robinson, Coleman, and Bruce Frazier, accompanied by McCormick, pushed their way into Hill and Douglas’ apartment. They forced Hill and Douglas, along with their visitors Crenshaw and Amanda Merrell, as well as McCormick, to remove their jewelry and clothes and tied them up with electrical cords. Darrell Frazier then brought Mildred Baker, McCormick’s girlfriend, to the apartment. Robinson demanded the drugs and money from the safe and, when no one answered, started stabbing Hill. Crenshaw said she could take them to the drugs and money and left with the Fraziers. Coleman and Robinson each then sexually assaulted both Merrell and Baker.
After giving them the drugs and money, Crenshaw escaped from the Frazi-ers, who returned to the apartment. Coleman and Robinson then slashed and shot their five prisoners, after which they and the Fraziers left. Despite having had her throat slashed three times and having been shot in the head, Mer-rell freed herself and summoned the authorities. The four other victims were dead at the scene.
Merrell and Crenshaw identified their abductors and assailants through photographs, and Coleman, Robinson, and Darrell Frazier were arrested eventually. A grand jury returned multiple-count indictments against them, charging first-degree murder, attempted first-degree murder, armed kidnapping, armed sexual battery, armed robbery, armed burglary, and conspiracy to traffic. Among other evidence presented at the joint trial, the medical examiner testified that three of the victims died from a combination of stab wounds and gunshots to the head and that the fourth died from a gunshot to the head. Both Crenshaw and Merrell identified Coleman, Robinson, and Frazier at trial, and Merrell identified a ring Coleman gave to a girlfriend as having been taken from her at the apartment. Several witnesses testified to drug dealing in Pensacola and to the people involved in that enterprise. Coleman and Robinson told their alibis to the jury with Coleman claiming to have been in Miami at the time of these crimes and Robinson claiming he had been in New Jersey then.
Coleman v. State, 610 So.2d 1283, 1284-85 (Fla.1992) (footnotes omitted).[1]
Following the guilt phase of trial, the jury found Robinson guilty on all counts. *175 See Robinson v. State, 610 So.2d 1288, 1289 (Fla.1992). At the penalty phase, trial counsel presented the testimony of Dr. James Larson, a psychologist who interviewed Robinson on two separate occasions, and Robinson’s mother, Mary Robinson. The jury returned a life recommendation. Subsequently, at a Spencer-like[2] hearing, trial counsel presented character letters on Robinson’s behalf to the trial judge. The trial court ultimately disagreed with the jury’s recommendation and sentenced Robinson to death. Id. In its sentencing order, the trial court found the following aggravating circumstances: (1) Robinson was previously convicted of a violent felony; (2) the capital felonies were committed during a robbery, sexual battery, burglary, and kidnapping; (8) the capital felonies were committed to avoid or prevent a lawful arrest; (4) the capital felonies were especially heinous, atrocious, or cruel (HAC); (6) the capital felonies were cold, calculated, and premeditated, and committed without any pretense of moral or legal justification (CCP). Id. at 1291. In mitigation, the trial court found only that Robinson had maintained close family ties and had been supportive of his mother. Id. at 1292.
On direct appeal, Robinson raised several claims, most of which were denied by this Court.[3] Id. at 1289-92. As to his claim that the trial court erred in overriding the jury’s life recommendation, we held that the “potential mitigating evidence presented in this case [did] not provide a reasonable basis for the jury’s recommendation.” Id. at 1292. Further, while we agreed with Robinson’s claim that the evidence did not support the avoid arrest aggravator, we held that the striking of this aggravator did not alter our conclusion as to the override because there was no reasonable likelihood that the trial court would have concluded that the mitigating evidence outweighed the four valid aggravators. Id.
On January 18, 2000, Robinson filed an initial Rule 3.850 motion for postconviction relief, which was subsequently amended, raising various claims.[4] The trial court granted an evidentiary hearing on Robinson’s claim that trial counsel was ineffec *176 tive for failing to investigate and present mitigation in the penalty phase. In a written order entered September 4, 2009, the trial court denied this claim and all other claims for relief. We now review Robinson’s appeal from the trial court’s denial of his postconviction motion[5] and Robinson’s accompanying petition for writ of habeas corpus.[6]
ANALYSIS
In his first claim under Rule 3.850, Robinson argues that counsel rendered ineffective assistance in failing to investigate and present mitigating evidence. In the portion of its order addressing this claim, the trial court found that the testimony presented during the postconviction evidentia-ry hearing was largely repetitious of the testimony presented at the original penalty phase proceedings. While acknowledging that the postconviction testimony discussed Robinson’s troubled background in greater detail, the trial court denied the claim of ineffective assistance, relying on this Court’s decisions in Lynch v. State, 2 So.3d 47, 71 (Fla.2008), and Darling v. State, 966 So.2d 366, 377 (Fla.2007). In those cases, this Court rejected ineffective assistance claims in part because the evi-dentiary hearing testimony was merely a more detailed presentation of mitigation than what was presented during the penalty phase. The trial court found that in Robinson’s case, the jury and the court were presented with evidence that Robinson was a perpetual witness to violence, that he grew up impoverished and in a crime-ridden neighborhood, and that he spent his childhood in a chaotic environment. The trial court also observed that the testimony of Robinson’s father could have been harmful to Robinson, and noted that the testimony of Ivory Baker, who formerly dated Robinson’s sister, suggests ed that the family seemed well-adjusted when the father was “taken out of the equation,” and that Mary Robinson was a “very good mother.” The trial court concluded that even if the additional testimony had been presented at trial, the record *177 would still reveal facts suggesting a sentence of death to be so clear that “no reasonable person could differ.”
Following the United States Supreme Court’s decision in Strickland, v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), this Court has held that for ineffective assistance of counsel claims to be successful, two requirements must be satisfied:
First, the claimant must identify particular acts or omissions of the lawyer that are shown to be outside the broad range of reasonably competent performance under prevailing professional standards. Second, the clear, substantial deficiency shown must further be demonstrated to have so affected the fairness and reliability of the proceeding that confidence in the outcome is undermined. A court considering a claim of ineffectiveness of counsel need not make a specific ruling on the performance component of the test when it is clear that the prejudice component is not satisfied.
Maxwell v. Wainwright, 490 So.2d 927, 932 (Fla.1986) (citations omitted).
Because both prongs of the Strickland test present mixed questions of law and fact, this Court employs a mixed standard of review, deferring to the circuit court’s factual findings that are supported by competent, substantial evidence, but reviewing the circuit court’s legal conclusions de novo. See Sochor v. State, 883 So.2d 766, 771-72 (Fla.2004).
There is a strong presumption that trial counsel’s performance was not deficient. See Strickland, 466 U.S. at 690, 104 S.Ct. 2052. “A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel’s challenged conduct, and to evaluate the conduct from counsel’s perspective at the time.” Id. at 689, 104 S.Ct. 2052. The defendant carries the burden to “overcome the presumption that, under the circumstances, the challenged action ‘might be considered sound trial strategy.’ ” Id. (quoting Michel v. Louisiana, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955)). “Judicial scrutiny of counsel’s performance must be highly deferential.” Id. In Occhicone v. State, 768 So.2d 1037, 1048 (Fla.2000), this Court explained that “strategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel’s decision was reasonable under the norms of professional conduct.” With these standards in mind, we now address Robinson’s ineffective assistance of trial counsel claim.
Deficiency
In arguing that counsel’s penalty phase performance was deficient, Robinson asserts that the defense did not employ a mitigation expert, did not request additional funding for mitigation beyond what was paid to Dr. Larson, did not obtain any institutional records regarding Robinson, and did not obtain any information regarding the Okeechobee Boys’ Home, where Robinson was placed for a time as a juvenile. Moreover, Robinson argues that defense counsel failed to provide Dr. Larson with background information and failed to conduct additional investigation despite indications from Dr. Larson that such investigation was needed. Finally, Robinson contends that trial counsel did not request additional time from the court to conduct a mitigation investigation and failed to seek out family and friends who could have provided important mitigation. In light of these allegations, it is clear that the crux of Robinson’s ineffective assistance claim rests on counsel’s failure to investigate possible mitigation.
*178 Pursuant to Strickland, “counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.” 466 U.S. at 691, 104 S.Ct. 2052. “[A]n attorney’s obligation to investigate and prepare for the penalty portion of a capital case cannot be overstated because this is an integral part of a capital case.” State v. Pearce, 994 So.2d 1094, 1102 (Fla.2008). In a failure to investigate claim, “a court must examine not only counsel’s alleged failure to investigate and present possibly mitigating evidence, but the reasons for doing so.” Schoenwetter v. State, 46 So.3d 535, 555 (Fla.2010) (quoting Jones v. State, 998 So.2d 573, 582 (Fla.2008)). “When evaluating claims that counsel was ineffective for fading to investigate or present mitigating evidence, this Court has phrased the defendant’s burden as showing that counsel’s ineffectiveness deprived the defendant of a reliable penalty phase proceeding.” Henry v. State, 937 So.2d 563, 569 (Fla.2006) (quoting Asay v. State, 769 So.2d 974, 985 (Fla.2000)).
Based on the evidentiary testimony presented concerning Robinson’s troubled background, we conclude that counsel failed to conduct an adequate investigation into available mitigation. At the evidentia-ry hearing, counsel testified that he did not believe anyone on the defense team examined the court files of Robinson’s pri- or record. Moreover, counsel did not obtain a mitigation expert in the case. In addition, counsel had a concern that not much information was provided to Dr. Larson, yet counsel failed to assert that he took any steps to alleviate this concern. Although counsel could not remember many details about his preparation for Robinson’s penalty phase, counsel noted that the record speaks for itself.
As discussed above, counsel presented two witnesses at the penalty phase for Robinson: Dr. Larson and Mary Robinson. Dr. Larson testified that Robinson had a chaotic childhood. Mary, Robinson’s mother, testified that the family lived in a crime-ridden neighborhood when Robinson was young, that Robinson did not have a relationship with his father, that Robinson observed his father being violent towards his mother, breaking her jaw on one occasion, that his father, Edward Robinson, Sr., told Robinson that he was not his father, and that Robinson’s brother was killed. Mary Robinson further testified that Robinson attended church and Bible college, but that she suspected Robinson was on drugs. After the presentation of mitigating evidence to the jury, defense counsel presented several character letters at the Spencer-Wke. hearing, which spoke of Robinson’s good qualities.
This testimony and evidence pales in comparison to the postconviction testimony. At the evidentiary hearing, Robinson presented testimony from the following witnesses: Ivory Baker, who formerly dated the defendant’s sister and spent significant time at the Robinson home; Gloria Baker, Ivory Baker’s mother; Richard De-lancey, the defendant’s uncle and Edward Robinson, Sr.’s younger brother; Edward Robinson, Jr., the defendant’s older brother; Marjorie Hammock, the former Director of Social Work for South Carolina who conducted a biopsychosocial evaluation of the defendant; Dr. Marvin Dunn, a community psychologist and retired teacher from Florida International University who performed an assessment of the impact of community factors and external factors on the defendant’s life; and Dr. James Larson, the mental health expert who testified at the defendant’s penalty phase. The court was also presented with the perpetuated testimony of Edward Robinson, Sr.
*179 The investigation performed for the evi-dentiary hearing revealed the following: Edward Robinson, Sr. (hereinafter “Edward”) often threatened to kill the entire family; Edward introduced the defendant to drugs; Edward was often under the influence of drugs such as cocaine and heroin and was emotionally damaged from drug use; Edward was high around the children, although they never saw him use cocaine; Edward and at least two of the defendant’s brothers were drug dealers; Edward glorified drug dealing in front of his children; there were guns in the Robinson home; the defendant’s family made the children fight each other; the defendant was exposed to illegal activity by his older brother; the defendant used alcohol, marijuana, cocaine, pills, and Quaaludes; the defendant attended an alternative school; the defendant was sent to a group home where there was ongoing physical and sexual abuse, although no evidence was presented that the defendant was personally abused; and the defendant was beaten by his father with two-by-fours, sticks, extension cords, and his fists. None of the above evidence was presented through Mary Robinson’s penalty phase testimony, Dr. Larson’s testimony, or the character letters.
As to the testimony concerning the defendant’s background, counsel had a valid reason for presenting Mary Robinson as a penalty phase witness. Mary Robinson was presented because she raised the defendant and the defense hoped to garner sympathy with her testimony. Counsel assumed that Mary knew the defendant best. Counsel’s error does not lie in the decision to present Mary Robinson as a witness, but rather in the failure to investigate potential mitigation from other witnesses who knew the defendant. Although counsel believed that Mary knew the defendant best, and made a strategic decision to present her as a witness, the record does not indicate that he attempted to investigate additional witnesses. An effort to obtain other witnesses, such as social worker Marjorie Hammock, would have been beneficial. Hammock’s testimony indicated that Mary may not have been the best witness to testify as to the defendant’s background because victims of abuse such as Mary tend to minimize their experiences.
This Court is “cognizant of the danger in assessing the adequacy of counsel’s investigation and preparation through the distorting lens of hindsight and take[s] care to evaluate the performance through counsel’s perspective at the time.” Blackwood v. State, 946 So.2d 960, 973 (Fla.2006) (citing Strickland, 466 U.S. at 689, 104 S.Ct. 2052). However, counsel’s strategic decisions are reasonable only if based on information resulting from a reasonable investigation conducted by counsel. See Wiggins v. Smith, 539 U.S. 510, 524, 536, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) (“[C]ounsel were not in a position to make a reasonable strategic choice ... because the investigation supporting their choice was unreasonable.”). Here, it is clear that counsel made the strategic decision to use Mary Robinson as the sole witness concerning Robinson’s childhood before conducting a full investigation.
Moreover, counsel was not prevented from conducting a full investigation. The State argues that counsel did not have to investigate child abuse because Robinson did not report child abuse to Dr. Larson. The State also claims that in this case “reasonable professional judgments supported] the limitations on investigation.” Wiggins, 539 U.S. at 533, 123 S.Ct. 2527 (quoting Strickland, 466 U.S. at 691, 104 S.Ct. 2052). In addition, the State asserts that Robinson gave counsel “reason to believe that pursuing certain investigations *180 would be fruitless or even harmful,” and that “counsel’s failure to pursue those investigations may not later be challenged as unreasonable.” Reed v. State, 640 So.2d 1094, 1097 (Fla.1994) (quoting Strickland, 466 U.S. at 691, 104 S.Ct. 2052). However, the record does not indicate that Robinson prevented counsel from pursuing other mitigation. Although Dr. Larson testified that Robinson was not fully cooperative with his evaluation, counsel testified at the evidentiary hearing that Robinson “cooperated with [counsel] — no question.” Further, Dr. Larson’s indication that Robinson was not an adequate historian should have prompted counsel to investigate other sources of information to obtain sufficient and accurate facts concerning Robinson’s background.
A review of the record demonstrates that this case is distinguishable from other cases where the lack of a full investigation was due to the defendant’s actions or requests. See, e.g., Brown v. State, 894 So.2d 137, 147 (Fla.2004) (“[T]he shortcomings of the penalty phase arose mainly from [the defendant’s] strict instructions to counsel not to speak to family members other than his mother. This lack of cooperation at the penalty phase undermines [the defendant’s] present allegations of ineffective assistance of counsel.”); Cherry v. State, 781 So.2d 1040, 1052 (Fla.2000) (“[W]hile counsel appears to have failed to give [the psychiatrist] sufficient information upon which to base an evaluation, counsel testified at the hearing that he would have given [the psychiatrist] everything within his possession, which in this case was apparently very little because of [the defendant’s] alleged lack of cooperation.”); Sims v. State, 602 So.2d 1253, 1257-58 (Fla.1992) (concluding that counsel could not be considered ineffective for honoring the defendant’s wishes where the defendant directed counsel not to collect other mitigating evidence).
Further investigation would have uncovered the mitigation that was presented at Robinson’s evidentiary hearing. The trial court found, and the State argues in this appeal, that the postconviction testimony was merely repetitive of information presented during Robinson’s penalty phase. It is true that counsel will not be held to be ineffective for failing to present evidence that is duplicative of evidence presented at the penalty phase. See Darling, 966 So.2d at 378. However, evidence presented at the evidentiary hearing was not merely more detailed or cumulative, it was new evidence. For example, testimony that Robinson grew up in a crime-ridden neighborhood does not reveal that he witnessed a murder at the age of five years old. Testimony that Robinson’s mother suspected he was on drugs is not as persuasive as testimony that Robinson used cocaine in addition to other illegal substances. Testimony that Robinson did not have a relationship with his father does not indicate that Edward glorified illegal activities to his children and physically abused Robinson. In light of the major differences between the penalty phase and postconviction testimony, it is clear that this case does not fall into the category of cases where postconviction counsel has presented cumulative evidence. See Cooper v. Sec’y, Dep’t of Corr., 646 F.3d 1328, 1353 (11th Cir.2011) (concluding that post-conviction testimony was not cumulative of testimony presented during the penalty phase where penalty phase testimony by the defendant’s mother “did not begin to describe the horrible abuse testified to by [the defendant’s] brother and sister” during postconviction proceedings).
The trial court also relied on the post-conviction testimony of Ivory Baker and the perpetuated testimony of Edward Robinson, Sr. in rejecting Robinson’s inef *181 fective assistance claim. As to witness Baker, the trial court mischaracterized his testimony. According to the order denying postconviction relief, Baker suggested that the family seemed well-adjusted when the father was taken out of the equation. Yet, according to testimony from both Baker and Dr. Dunn, Edward ivas never fully out of the equation. Specifically, Baker testified that even when Mary and the children moved to another house, Edward was at the new house “off and on.” In addition, Baker believed that Mary had a problem ending her relationship with Edward. Dr. Dunn testified that “[i]n a way, Mary Robinson never left Ed, Sr., and, in a way, she may still be with him, which is typical of [a] battered woman. Many of them find it difficult to break the relationship even though it’s very painful for them.” Indeed, although Baker and Dr. Dunn testified that Mary was a good and loving mother, Dr. Dunn concluded that Mary “was a passive, ineffective, battered woman, who did not have the strength, emotionally or in any other way, to protect her children from the ongoing trauma that they lived all their young lives.”
In regards to Robinson’s father, the trial court concluded that his perpetuated testimony could have been harmful to Robinson if presented at the penalty phase. The court noted that Edward characterized Robinson as cruel, mean and very aggressive, and that Edward opined that Robinson seemed to enjoy fighting and got into the most trouble out of all the children. Moreover, although not noted by the trial court, Edward stated that Robinson shot at a vehicle when Edward and Robinson’s siblings were' in the vehicle. However, Edward’s testimony would not have substantially harmed Robinson if presented in conjunction with the other postconviction testimony. Edward’s negative view of Robinson would have undoubtedly been tempered with the consistent accounts that Edward himself was cruel, mean and abusive. Moreover, Edward also accused Dr. Dunn of attempting to sleep with Mary. Thus, Edward’s observations and perceptions are questionable and point more towards a diagnosis of paranoia, as Dr. Dunn suggested. In light of the above, the content of statements by Baker and Edward do not undermine Robinson’s assertion that this evidence could have been presented during his penalty phase proceeding.
Although the majority of the postconviction testimony was not presented at Robinson’s penalty phase, it cannot be ignored that counsel did present some additional mitigation to the trial court after the penalty phase presentation to the jury. The State emphasizes that after the jury recommendation, counsel obtained twelve character letters from various individuals pleading with the trial court to spare Robinson’s life. Robinson asserts that counsel was deficient in failing to present additional mitigating evidence. As to this point, the case of Williams v. State, 987 So.2d 1 (Fla.2008), is instructive.
Ronald Lee Williams, the head of a Florida drug trafficking ring, was the individual who sent Robinson, Frazier and Coleman to retrieve the stolen drugs and money. See Williams v. State, 622 So.2d 456, 458 (Fla.1993). Robinson, Frazier and Coleman were tried, convicted, and sentenced before Williams’ trial. See Williams, 987 So.2d at 5. Williams was convicted and received a life recommendation by an 11-1 jury vote. Id. at 5-6. The trial court found the following six aggravating circumstances: (1) Williams was previously convicted of another capital felony, the murder of the other three victims; (2) the murders were committed while Williams was an accomplice in a robbery, sexual battery, burglary, and kidnapping; (3) the murders were committed for the *182 purpose of avoiding arrest; (4) the murders were committed for pecuniary gain; (5) the murders were HAC; and (6) CCP. Id. at 6. The court found one nonstatutory mitigator: Williams was loving to his son and mother. Id. On direct appeal, this Court struck the HAC and avoid arrest aggravators, but affirmed the death sentence because there was only “miniscule” evidence of mitigation. Id.
During Williams’ subsequent postconviction proceedings, Williams alleged that counsel was deficient in failing to present mitigating evidence. In concluding that counsel rendered deficient performance, we observed that even under ordinary circumstances defense counsel is obligated to investigate and present mitigating evidence. Id. at 13. We explained, however, that where there is a “known and substantial risk of override, defense counsel’s responsibility to investigate and present mitigating evidence [is] heightened.” Id. In Williams’ case, we found that although trial counsel was aware that the trial judge overrode Robinson’s, Frazier’s and Coleman’s life recommendations, counsel failed to present extensive, available mitigation concerning Williams’ abusive childhood, history of substance abuse, and mental impairments. Id. at 5,11-12.
Similarly, in this ease, counsel was specifically cautioned that this Court had a history of affirming life overrides in the absence of substantial factual mitigation. In a letter addressed to trial counsel dated June 5, 1989, Chief Assistant Public Defender Terry D. Terrell stated:
I thought you should be aware that Judge Geeker has the attached Memorandum in Support of Jury Recommendation of Life before him for his consideration in the Vernon Ray Cooper case. I have spelled out the long line of recent authority supporting upholding life recommendations.
It is significant to note that in the absence of substantial factual mitigation the Florida Supreme Court has been affirming life overrides.
I think you should share this information with the counsel for the co-defendants in your case. It will be extremely important to detail specific factual mitigation arising from the evidence relating to guilt or from the information supplied before the jury in mitigation. It may also be necessary for you to supply additional factual mitigation for the trial court that goes beyond that presented to the jury. The Court is allowed to consider information outside the presence of the jury.
As you may see from a reading of these cases, providing an evidentiary basis for the jury’s recommendation is crucial.
Thus, counsel was placed on notice that failing to provide at a minimum “specific factual mitigation arising from the evidence relating to guilt or from the information supplied before the jury in mitigation” increased the risk of a jury override.
Moreover, unlike in Williams, counsel in Robinson’s case had the additional opportunity to present mitigation evidence to the trial judge before Robinson was sentenced. After the jury rendered its advisory sentence, the trial court stated, “I want to hear from you any additional information you had for me particularly in the way of any mitigating factors or circumstances you want to articulate for me to consider — in considering an appropriate sentence in this case.” Rather than expand on what was presented to the jury and conduct further investigation into Robinson’s troubled childhood, counsel provided character letters which merely affirmed Mary Robinson’s testimony that Robinson was a “sweet child.” In addition, counsel referenced Robinson’s young age and lack of prior convictions for violent crimes. *183 Thus, besides counsel’s comments on the lack of prior violent crimes, counsel’s mitigation presentation to the trial court was largely repetitive of the mitigation presentation to the jury. As such, it appears that counsel failed to “detail specific factual mitigation arising from the evidence relating to guilt or from the information supplied before the jury in mitigation” or to “supply additional factual mitigation for the trial court that goes beyond that presented to the jury,” and failed to fulfill the Williams duty of investigating and presenting mitigating evidence where there is a known and substantial risk of override.
In light of counsel’s failure to investigate and present mitigating evidence concerning Robinson’s difficult childhood, we conclude that counsel rendered deficient performance.
Prejudice
Because the jury recommended a life sentence in this case, Robinson cannot demonstrate prejudice stemming from counsel’s failure to present the additional evidence as to his background to the jury. Instead, we must analyze whether Robinson was prejudiced in counsel’s failure to present mitigating evidence concerning Robinson’s background to the trial judge during the Spencer-like proceeding. If the additional evidence presented through the postconviction testimony would have provided a reasonable basis for a life recommendation and sentence, then prejudice has occurred. See Williams, 987 So.2d at 11 (citing Hall v. State, 541 So.2d 1125, 1128 (Fla.1989)). To this end, Robinson argues that the substantial amount of mitigation presented at his evidentiary hearing would have provided a reasonable basis for the jury’s life recommendation.
The State, citing several cases, argues that the postconviction evidence would not have overcome the aggravation found by the trial court. In addition, the State discusses the strength of the aggravation in Robinson’s case and the lack of mitigation as compared to other cases. However, the weighing process which a trial court conducts after a death recommendation is different from the review conducted after a life recommendation. As pronounced by this Court in Tedder v. State, 322 So.2d 908, 910 (Fla.1975), “A jury recommendation under our trifurcat-ed death penalty statute should be given great weight. In order to sustain a sentence of death following a jury recommendation of life, the facts suggesting a sentence of death should be so clear and convincing that virtually no reasonable person could differ.” “The singular focus of a Tedder inquiry is whether there is ‘a reasonable basis in the record to support the jury’s recommendation of life,’ rather than the weighing process which a judge conducts after a death recommendation.” Washington v. State, 907 So.2d 512, 514 (Fla.2005) (quoting Keen v. State, 775 So.2d 263, 283 (Fla.2000)). “[T]he jury’s life recommendation changes the analytical dynamic and magnifies the ultimate effect of mitigation on the defendant’s sentence.” Keen, 775 So.2d at 285. Thus, even though there may be several valid aggra-vators in this case, the question is whether enough mitigation exists upon which a reasonable juror could rely. See id. at 286-87, 287 n. 24. The crucial question in this case therefore becomes the following: If the postconviction testimony had been presented at the Spencer-like hearing before the trial judge, would the jury’s life recommendation have been supported by a reasonable basis?
At the postconviction evidentiary hearing, Robinson presented testimony that (1) he grew up in a crime-ridden neighborhood; (2) his family was poor; (3) his father physically abused him; (4) his father introduced him to drugs and abused *184 drugs; (5) the loss of his older brother had a large effect on him; (6) he had a substance abuse problem; (7) he witnessed his father physically abusing his mother; (8) he was protective of his family members; (9) he witnessed physical violence against others; (10) he was emotionally traumatized; and (11) he had an erratic school record. Each of the above factors has been considered as mitigating evidence in prior cases. See McGirth v. State, 48 So.3d 777, 785 (Fla.2010); Zommer v. State, 31 So.3d 733, 743-44 (Fla.2010), cert. denied, — U.S. -, 131 S.Ct. 192, 178 L.Ed.2d 115 (2010); Stewart v. State, 37 So.3d 243, 253-54 (Fla.2010); Hernandez v. State, 4 So.3d 642, 655 (Fla.2009); Williams, 987 So.2d at 11; Philmore v. State, 937 So.2d 578, 581 n. 1 (Fla.2006); Douglas v. State, 878 So.2d 1246, 1260 (Fla.2004); Hamilton v. State, 875 So.2d 586, 592-93 (Fla.2004).
Most relevant to our analysis is our recently issued opinion in Coleman v. State, 64 So.3d 1210 (Fla.2011). Coleman, one of Robinson’s co-defendants, was sentenced to death based on the same aggravating and mitigating factors as Robinson. Id. at 1214. In our opinion, we noted that Coleman presented substantial mitigation at the postconviction evidentiary hearing, which demonstrated that Coleman (1) came from an impoverished background; (2) had an unstable childhood; (3) had a poor relationship with his father; (4) was traumatized by the loss of his father at a young age; (5) was traumatized by the loss of his half-brother; (6) suffered from negative experiences, such as riots and violence, at a young age; (7) had an erratic school record and history of special education placement; (8) had a long history of substance abuse; (9) was molested as a child; (10) received a severe head injury at the age of eighteen; and (11) suffered from mental health illness and deficiencies. Id. at 1218-19. We held that trial counsel’s failure to investigate and present this mitigation deprived Coleman of a reliable penalty phase proceeding. Moreover, we held that the failure to present this evidence precluded this Court from making a fully informed decision regarding the disposition of the case on direct appeal. Id. at 1225.
Notably, this Court stated in Coleman’s direct appeal: “[T]he potential mitigating evidence presented in the instant case is of little weight and provides no basis for the jury’s recommendation.” Coleman, 610 So.2d at 1287. We explained that we reached this conclusion, even though we struck one of the aggravators found by the trial court, because we found “no reasonable likelihood that the trial court would conclude that the mitigating evidence outweighed the four remaining aggravators.” Id. In a separate opinion, Chief Justice Barkett wrote, “I cannot say that no reasonable person could have recommended a life sentence here.”. Id. at 1288 (Barkett, C.J., concurring in part and dissenting in part). These statements were taken into account when Coleman sought postconviction relief before this Court. We explained: “[I]t is clear that [defense coun-selj’s failure to investigate, develop, and present the mitigation evidence not only undermined confidence in the outcome of the trial proceedings, but also precluded this Court from making a proper disposition of the ease on direct appeal.” Coleman, 64 So.3d at 1225 (emphasis added).
Notably, many of Robinson’s mitigating factors established through the postconviction testimony are similar to the mitigating factors that formed the basis of Coleman’s valid ineffective assistance claim. Admittedly, the cases are not identical. Coleman’s mental health expert testified to mental health mitigation not present in Robinson’s case, and evidence was also presented that Coleman was molested *185 when he was young. However, Robinson has also established mitigation that was not found in Coleman’s case, namely, (1) the abuse he endured at the hands of his father and the extremely negative influence his father had on his life, and (2) that from a young age he witnessed violent acts being committed against his mother and others, including witnessing others being killed. We conclude that Robinson has presented mitigation that is equally as strong as the mitigation presented in Coleman’s case on postconviction review.
Moreover, the analyses in the direct appeals of Robinson and Coleman as to the jury override are nearly identical. We held on direct appeal that the potential mitigating evidence presented in Robinson’s case did not provide a reasonable basis for the jury’s life recommendation. See Robinson, 610 So.2d at 1292 (“As with Coleman, any sentence other than death for Robinson would be disproportionate.”). In light of the similarities between Robinson’s and Coleman’s cases, we conclude that the mitigating evidence presented by Robinson during his postconviction eviden-tiary hearing provided a reasonable basis for the jury’s life recommendation. Accordingly, we hold that the trial court erred in denying Robinson’s claim of ineffective assistance of counsel based on trial counsel’s failure to investigate and present mitigating evidence.
CONCLUSION
Because we determine that Robinson is entitled to relief based on trial counsel’s failure to investigate and present mitigating evidence, it is unnecessary for this Court to address the remaining claims raised in Robinson’s motion under Rule 3.850, and we decline to do so. We find no merit in the claims raised in Robinson’s petition for writ of habeas corpus. As in Coleman, 64 So.3d at 1227, we vacate Robinson’s death sentences and remand for the imposition of a sentence of life in prison on each count of first-degree murder.[7]
It is so ordered.
PARIENTE, QUINCE, LABARGA, and PERRY, JJ., concur.
LEWIS, J., concurs in result.
POLSTON, C.J., and CANADY, J., dissenting.

. The facts are taken from the co-defendant's case because the facts were not fully summarized in Robinson’s opinion on direct appeal.

. The phrase "Spencer-like" is used in this opinion because Robinson's trial was held before this Court's decision in Spencer v. State, 615 So.2d 688 (Fla.1993), was issued.

. The claims addressed were as follows: (1) whether the trial court erred in denying both a continuance and a change of venue; (2) whether the trial court erred in refusing to sever Robinson’s trial from his co-defendants; (3) whether the trial court erred in not severing out the conspiracy count; (4) whether the evidence was insufficient to support Robinson’s conspiracy conviction; (5) whether the prosecutor’s act of placing two knives that had been entered into evidence on the bar of the jury box inflamed the jury; (6) whether Robinson’s shackling during trial violated his due process rights; (7) whether the trial court erred in denying a continuance relating to DNA testing and in admitting DNA testimony; (8) whether the evidence supported the avoid arrest aggravator; (9) whether the trial court erred in overriding the jury's recommendation of life imprisonment; and (10) whether Robinson's sentence was disproportionate. See Robinson, 610 So.2d at 1289-92. Robinson also argued in his initial brief that the trial court erred in rejecting the victims’ participation in the events leading to his charges as a statutory mitigating factor. This Court did not discuss this claim but merely quoted the trial court, which stated, "[T]he victim’s background cannot be used to mitigate the sentence to be imposed and warranted under these facts.” Id. at 1292.

.Robinson’s amended postconviction motion is governed by the requirements applicable to Florida Rule of Criminal Procedure 3.850 rather than Rule 3.851 because his initial motion was filed before October 1, 2001, the effective date of Rule 3.851. See Rodriguez v. State, 39 So.3d 275, 282 n. 4 (Fla.2010).

. Robinson has raised the following claims in his appeal: (1) whether the trial court erred in denying his claim that trial counsel was ineffective in failing to investigate and present mitigating evidence; and (2) whether the trial court erred in summarily denying his claims that (a) his due process rights were violated when he was shackled throughout trial and (b) trial counsel provided ineffective assistance by failing to inquire into the necessity of the shackling.

. Robinson has raised the following claims in his petition for habeas corpus: (1) whether appellate counsel provided ineffective assistance by failing to file a petition for certiorari with the United States Supreme Court and by failing to advise her client of his right to file such a petition; (2) whether this Court erred in summarily denying Robinson’s pro se claims of ineffective assistance of appellate counsel; (3) whether Robinson was improperly charged and convicted of attempted felony murder; (4) whether Florida’s legislative scheme for the appointment of counsel in capital postconviction cases is unconstitutional to the extent that it prohibits Capital Collateral Regional Counsel and registry counsel from bringing a section 1983 method of execution challenge and from representing defendants in noncapital cases used as aggravators, clemency proceedings, and other related proceedings; (5) whether Florida’s method of execution constitutes cruel and unusual punishment and would deprive Robinson of his rights to due process and equal protection; (6) whether Robinson’s Eighth Amendment right against cruel and unusual punishment will be violated because he may be incompetent at the time of execution; (7) whether Robinson's execution is barred by the Eighth and Fourteenth Amendments of the United States Constitution and corresponding provisions of the Florida Constitution because he suffered from a major mental illness at the time of the offense; and (8) whether Double Jeopardy precludes death as a possible punishment in the event postconviction relief in any form is granted.

. When this Court reverses a jury override, the proper remedy is to remand for the imposition of sentences of life in prison rather than for a new sentencing proceeding. See Coleman, 64 So.3d at 1226-27. To this extent, we have receded from our decisions in Torres-Arboleda v. Dugger, 636 So.2d 1321 (Fla.1994), Heiney v. State, 620 So.2d 171 (Fla.1993), Stevens v. State, 552 So.2d 1082 (Fla.1989), Hall, 541 So.2d 1125 (Fla.1989), and their progeny. Coleman, 64 So.3d at 1226 n. 13. Whether these life sentences should be concurrent or consecutive is a matter within the trial court’s discretion. Id. at 1227 (citing Williams, 987 So.2d at 16).